IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KATHY MAE HAWKINS personal Representative for the ESTATE OF LEAFY ANN LUNDIN, | No. 3:24-cv-00502-HZ |
| | OPINION & ORDER |
| Plaintiff(s), | |
| v. | |
| KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST dba KAISER PERMANENTE, an Oregon nonprofit corporation; SUNGEYUN DAVID CHO, M.D. an individual; COVIDIEN SALES LLC; COVIDIEN LP; COVIDIEN HOLDING, Inc.; and MEDTRONIC, Inc., | |
| Defendant(s). | |

George McCoy
Warren Allen LLP
10535 N.E. Glisan Street
Suite 200
Portland, OR 97220

    Attorneys for Plaintiff

1 – OPINION & ORDER

Michael J. Estok
Lindsay Hart LLP
1300 S.W. Fifth Avenue
Suite 3400
Portland, OR 97201

>Attorneys for Defendants Covidien Sales, LLC; Covidien LP; Covidien Holdings, Inc.; and Medtronic, Inc.

HERNÁNDEZ, District Judge:

This matter is before the Court on the Motion to Dismiss the Second Claim of Plaintiff's Complaint Pursuant to Rule 12(b)(6), ECF 5, filed by Defendants Covidien Sales, LLC; Covidien LP; Covidien Holdings, Inc.; and Medtronic, Inc. ("Medtronic Defendants"). For the reasons that follow the Court grants Medtronic Defendants' Motion to Dismiss.

## BACKGROUND

The following facts are taken from the Complaint and Medtronic Defendants' Motion to Dismiss and are viewed in the light most favorable to Plaintiff.

On October 14, 2021, Leafy Ann Lundin was admitted to Kaiser Sunnyside Medical Center for "laparoscopic splenic flexure resection surgery as a result of her colon cancer." Compl. at 3, ECF 1, Ex. 1. Defendant Sungeyun David Cho, M.D., performed the surgery, "during which he used the LigaSure medical device." *Id*. At some point "during the dissection an unusual alarm sounded on the LigaSure. It appeared there was an electronic shortage in the LigaSure, which created a bowel injury." *Id.* Dr. Moran[1] was called in to assist with the injury. "Dr. Moran patched the injury line and inserted a PIC line to ensure that Lundin would be able to eat." *Id.*

---

[1] Dr. Moran is not a party to this action and is not identified by their full name in the Complaint.

On November 5, 2021, Lundin was discharged from the medical center, however she was "unable to eat any food via her mouth for over a month . . . due to the injury from the LigaSure device and the required PIC[2] line." Compl. ¶ 10.

On January 1, 2022, Lundin returned to "the hospital" for an additional surgery scheduled for January 5, 2022. The surgery was postponed "due to an emergency surgery needed on a different patient. Ms. Lundin passed on January 5, 2022, at 4:26 p.m. Her cause of death [was] attributed to 'prior colectomy with intraoperative duodenal jejunal injury and being on total parenteral nutrition.'" Compl. ¶ 11.

On March 21, 2024, Plaintiff Kathy Mae Hawkins, personal representative for the Estate of Lundin, filed a complaint in Clackamas County Circuit Court against Medtronic Defendants, Kaiser Foundation Health Plan of the Northwest ("Kaiser"), and Dr. Cho asserting claims for negligence and wrongful death.

On March 22, 2024, Medtronic Defendants removed the matter to this Court on the basis of diversity jurisdiction.

On April 18, 2024, Medtronic Defendants filed a Motion to Dismiss Plaintiff's second claim. Plaintiff did not file a response and the Court took the matter under advisement on May 23, 2024.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

---

[2] A PIC line is "[a] peripherally inserted central catheter . . . inserted through a vein in [the] arm and passed through to the larger veins near [the] heart. . . . A PIC[] line gives [the] doctor access to the large central veins near the heart. It's generally used to give medications or liquid nutrition." https://www.mayoclinic.org/tests-procedures/picc-line/about/pac-20468748 (last visited May 15, 2024)

3 – OPINION & ORDER

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Medtronic Defendants move to dismiss Plaintiff's second claim for negligence and wrongful death[3] as untimely and for failure to state a claim.

Plaintiff alleges the following facts in her second claim against Medtronic Defendants:

---

[3] The Complaint combines claims for negligence and wrongful death against Medtronic Defendants in one claim, supported by the same allegations.

4 – OPINION & ORDER

Medtronic Defendants "either individually or through affiliates designed, manufactured, marketed, packaged, labeled, and sold a defective medical device known as 'LigaSure.'" Compl. ¶ 15. LigaSure was used by Defendant Kaiser in Lundin's laparoscopic splenic flexure resection. LigaSure "was defective because it had an electronic shortage during use, caused an injury of an improper dissection of . . . Lundin's bowel, and failed to contain adequate warnings." *Id.* ¶ 17. "[T]his defective condition rendered the product unreasonably dangerous to" Lundin and proximately caused damages. "At the time the LigaSure left the control of [Medtronic Defendants] they knew or in the light of reasonably available knowledge, should have known about the danger that caused the damage to [Lundin] for which recovery is sought and that the ordinary user or consumer would not realize the dangerous condition presented by" LigaSure. *Id.* ¶ 19. Medtronic Defendants, however, failed to warn that the device could "negligently and unexpectedly have an electronic shortage during use" and failed to "communicate sufficient information on the dangers and safe use of" LigaSure. *Id.* ¶¶ 18, 20.

Plaintiff also alleges LigaSure was "designed in a defective manner" and "there existed a feasible design alternative that would have to [*sic*] reasonable probability prevent the harm to [Lundin] . . . without impairing the utility, usefulness, practicality, or desirability of the product to user or consumers." Compl. ¶¶ 21, 23. Plaintiff contends that Medtronic Defendants' "conduct in releasing the LigaSure for sale to the unsuspecting public when [they] knew or in the exercise of reasonable care should have known that [it] was defective and unreasonably dangerous and likely to cause serious health complicated showed actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others." *Id.* ¶ 27. Finally Plaintiff alleges "[t]here are other similar incidents throughout the United States of personal injuries caused by the failure to LigaSure." *Id.* ¶ 27.

I.    **Wrongful Death Claim**

Although Plaintiff labels the second claim as one for wrongful death, the allegations indicate that Plaintiff's claim is in part one for products liability under Oregon law. Oregon Revised Statute § 30.900 defines a "product liability civil action" as:

> a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury [or] death . . . arising out of:
>
>> (1) Any design, inspection, testing, manufacturing or other defect in a product;
>>
>> (2) Any failure to warn regarding a product; or
>>
>> (3) Any failure to properly instruct in the use of a product.

Oregon courts have made clear that "[a] 'product liability civil action' . . . embraces all theories a plaintiff can claim in an action based on a product defect, including negligence and strict liability claims." *Brown v. GlaxoSmithKline, LLC*, 323 Or. App. 214, 219 (2022)(quotation omitted).

Oregon Revised Statute § 30.920 imposes strict liability on a manufacturer for injuries caused by its product if the product is "both defective and unreasonably dangerous." *Purdy v. Deere & Co.*, 311 Or. App. 244, 247 (2021). "Unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn as a design defect." *Harris v. Nw. Nat. Gas Co.*, 284 Or. 571, 576 (1978).

To state a claim for strict liability under Oregon Revised Statute § 30.920, a plaintiff must allege facts showing: "(1) the sale or leasing of a product by one engaged in the business of selling or leasing such products; (2) a product that was expected to, and did, reach the user or consumer without substantial change in condition; (3) a product that, when sold, was in a defective condition unreasonably dangerous to the user or consumer; (4) injury to the user or consumer, . . .; (5) that was caused by the product's defective condition." *Chong v. STL Int'l, Inc.*,

152 F. Supp. 3d 1305, 1316–17 (D. Or. 2016)(quoting *McCathern v. Toyota Motor Corp.*, 332 Or. 59, 77 n.15 (2001)). "[T]o recover on a product liability theory, a plaintiff must establish not only that the product was defective but also that the defect was of a type that rendered the product unreasonably dangerous to persons or property. Not every defect that causes a product to be in a condition not reasonably contemplated by a user is an unreasonably dangerous one." *Russell v. Deere & Co.*, 186 Or. App. 78, 82 (2003)(quotation omitted). "A defective product presents an unreasonable danger when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (quotation omitted).

   Plaintiff broadly alleges LigaSure was defective because "it had an electronic shortage during use" and failed to contain adequate warnings and that Medtronic Defendants failed to communicate sufficient information on the dangers and safe use of the device and designed the product in a defective manner. Plaintiff, however, does not identify which of the component parts of the device at issue are "defective" or describe the nature of the purported defect. Rather, the Complaint states only that "[t]he LigaSure device was defective because it had an electronic shortage" during use. Compl. at 3. Under similar circumstances courts have found plaintiffs failed to adequately plead claims for products liability. *See, e.g., Lawrence v. Medtronic*, 791 F. App'x 679, 680 (9th Cir. 2020)(finding district court did not err in dismissing the plaintiff's claims because the complaint "contains only conclusory allegations, which fail to identify any specific . . . requirement that was violated or the specific nature of the Pump's purported defects" nor did the plaintiff "plausibly allege either the violation of a specific requirement or the specific nature of the defect"); *Yarbrough v. Stryker Corp.*, No. 3:20-CV-00506-IM, 2021 WL 27291, at *3 (D. Or. Jan. 4, 2021)("Simply alleging that a device is 'defective' is not sufficient to satisfy

7 – OPINION & ORDER

pleading requirements, and the fact that Plaintiff required a replacement surgery does not alone equate to a defect, particularly in a case involving a complex medical device.")

As to Plaintiff's assertion of inadequate warnings or information, "Oregon has long recognized that product sellers have a duty to provide adequate warnings about nonobvious risks of injury associated with the use of their products when they know, or reasonably should know, of those risks of injury." *Gonzalez v. Gibbs Int'l, Inc.*, No. 3:21-CV-01844-AN, 2023 WL 6319051, at *5 (D. Or. Sept. 28, 2023)(citing *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or. App. 444, 454-55 (2002)). Plaintiff, however, fails to allege any facts that support its conclusory statement that Medtronic Defendants knew or reasonably should have known of a defect in LigaSure that could cause an electronic shortage during use. Plaintiff's allegation that "[t]here are other similar incidents throughout the United States of personal injuries caused by the failure of" LigaSure is not sufficiently specific to infer that other injuries were caused by an electronic shortage of the device at issue or that Medtronic Defendants should have known of the risk of injury of the kind Lundin suffered.

To the extent that Plaintiff alleges any warnings or information provided by Medtronic Defendants was inadequate, under Oregon law a warning is inadequate when "it is misleading, ambiguous, contains important omissions, fails to reveal the full extent of the dangers, or fails to provide notice that use of the product should be permanently discontinued prior to the patient suffering irreversible injury." *Hobus v. Howmedica Osteonics Corp.*, No. 3:21-CV-00080-AN, 2023 WL 6850144, at *14 (D. Or. Oct. 17, 2023)(citing *McEwen v. Ortho Pharm. Corp.*, 270 Or. 375, 402-04 (1974)). The Complaint, however, does not allege what warnings were provided for the device or how the warnings were misleading, ambiguous, contained important omissions or similar. In addition, to recover damages under Oregon law the inadequate warning "'must be a

substantial cause of the person's injuries.'" *Crosswhite v. Jumpking, Inc.,* 411 F. Supp. 2d 1228, 1235 (D. Or. 2006)(quoting *Benjamin v. Wal–Mart Stores, Inc.*, 185 Or.App. 444, 453 (2002)). Plaintiff does not allege Lundin's surgeon would have performed the procedure differently if Medtronic Defendants had provided an adequate warning of the danger associated with the device.

In summary, Plaintiff fails to allege facts sufficient to state a claim under § 30.900. Accordingly, the Court grants Medtronic Defendants' Motion to Dismiss this portion of Plaintiff's second claim.

## II.     Negligence Claim

Medtronic Defendants assert Plaintiff's claim for ordinary negligence against them must be dismissed as time barred.

"A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Oregon Revised Statute § 30.905(1) provides: "a product liability civil action for personal injury . . . must be commenced not later than two years after the plaintiff discovers, or reasonably should have discovered, the personal injury . . . and the causal relationship between the injury . . . and the product, or the causal relationship between the injury . . . and the conduct of the defendant."

Plaintiff alleges that Lundin died January 5, 2022, and her cause of death was "attributed to prior colectomy with intraoperative duodenal jejunal injury and being on total parenteral nutrition." Compl. ¶ 11. Oregon Revised Statute § 432.133(a) provides that "[a] report of death for each death that occurs in [Oregon] must be submitted to the county registrar of the county in which the death occurred or to the Center for Health Statistics . . . within five calendar days after

death. . . ." The report of Lundin's death, therefore, was required to be completed and available to be obtained by her estate no later than January 10, 2022. Accordingly, Plaintiff reasonably could have discovered the cause of Plaintiff's death was "intraoperative duodenal jejunal injury" by January 10, 2022.

Under Oregon law "[w]hen a plaintiff serves a defendant within 60 days of filing the complaint, the action is considered commenced on the date the complaint was filed." *Bulek v. Kaiser Found. Hosps.*, No. 3:23-CV-01585-MO, 2024 WL 1436134, at *2 (D. Or. Apr. 3, 2024) (citing ORS 12.020(2)). In their Notice of Removal Medtronic Defendants note the Complaint was not served on any defendant at the time this matter was removed on March 22, 2024. Even assuming, however, that Plaintiff serves Defendants within 60 days of filing the Complaint, this matter was commenced no earlier than March 21, 2024. Accordingly, Plaintiff filed the Complaint against Medtronic Defendants more than two years after she reasonably should have discovered the cause of Plaintiff's injury. Plaintiff's ordinary negligence claim is, therefore, time barred.

## CONCLUSION

The Court GRANTS Medtronic Defendants' Motion to Dismiss the Second Claim of Plaintiff's Complaint Pursuant to Rule 12(b)(6), ECF 5. The Court grants Plaintiff leave to file an Amended Complaint no later than 14 days after the entry of this Opinion and Order, limited to Plaintiff's second claim and to the extent Plaintiff can cure the defects in that claim as set out in

this Opinion and Order

    IT IS SO ORDERED.

    DATED:_____June 10, 2024_____.

*Marco Hernandez*

MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER